An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

BILLY RAY JAMES,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 61317

**FILED**

JUL 1 6 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF REVERSAL AND REMAND

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder, burglary while in possession of a firearm, and possession of a firearm by an ex-felon. Eighth Judicial District Court, Clark County; Valerie Adair, Judge.

Appellant Billy Ray James contends that there was insufficient evidence to support his convictions for first-degree murder and burglary while in possession of a firearm. We review the evidence in the light most favorable to the prosecution and determine whether any rational juror could have found the essential elements of the crimes beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992).

Here, evidence was presented that James entered the victim's home through the front door after being greeted by the victim around 7:42 a.m. Twenty-one minutes later James is seen on surveillance video exiting the back door and breaking the glass and wood frame by kicking it before reentering the home. A few seconds later James is seen on video

14-23116

exiting the front door and leaving the victim's property. Later that afternoon the victim's daughter discovered the victim at his home sitting in his recliner with a gunshot wound just behind his right ear. The victim was left-handed and the trajectory of the bullet was down and to the left. The absence of stippling indicated that the bullet was fired at least 12 to 16 inches away from the victim's head. During several recorded jail phone calls James is heard discussing the circumstances surrounding the shooting in which James claimed the shooting was an accident. According to James' explanation during the recorded phone calls the victim was acting "belligerent," called James crazy, accused James of siding against him, and brandished a .25 or .38 caliber handgun. James claimed that he tried to grab the gun out of the victim's hand and it went off. The victim's daughter testified that the victim owned a shotgun and a revolver which he usually kept in close proximity to him. A police officer testified that he discovered a single .25 caliber cartridge casing near the body and that revolvers do not automatically eject cartridge casings. James' cellmate testified that James told him that the cartridge casing hit James in the face after the gun fired. The victim was legally blind and walked with a cane. During a recorded interview with detectives, James told them that the victim accused him of turning against him, pointed a gun at him, the gun went off, and he panicked and took off.

We conclude that a rational juror could infer from these circumstances that James entered the victim's home with the intent to commit a felony and willfully and maliciously shot the victim with premeditation and deliberation. *See* NRS 200.010; 200.030; NRS 205.060. "[I]t is the jury's function, not that of the court, to assess the weight of the

evidence and determine the credibility of witnesses." *McNair*, 108 Nev. at 56, 825 P.2d at 573. The verdict will not be disturbed on appeal, where, as here, sufficient evidence supports James' convictions. *Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981); *see also Buchanan v. State*, 119 Nev. 201, 217, 69 P.3d 694, 705 (2003) (circumstantial evidence alone may sustain a conviction).

James also challenges a district court order denying his motion to suppress the statements he made during his third interrogation. In his motion to suppress three interrogations which occurred over the course of 36 hours, James argued that his statements were involuntary, detectives sought to minimize and downplay the significance of their *Miranda*[1] warnings, he invoked his right to remain silent and his right to an attorney, and detectives violated his rights by continuing to question him after he invoked his *Miranda* rights.

At 2:20 a.m. on February 11, 2010, officers from the North Las Vegas police department set off flash-bang devices outside of a residence where James was sleeping and ordered the occupants to vacate the building. James exited the building without shoes or socks. He was taken into custody and immediately transported to the Detective Bureau for interrogation. James had taken his antipsychotic medication a short time earlier. The interrogation began at 3:35 a.m. with Detective Benjamin Owens telling James, "I had to empty your pockets out temporarily. Another procedure that I gotta do . . . just cause it's a rule I gotta read you

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

your rights. It's not a big deal okay? So we'll go ahead and get that out of the way." During an evidentiary hearing detective Owens described this as "an investigative technique to try to get them to waive their rights" which he has used in the past. Detective Owens then read James his *Miranda* rights and James signed an advice-of-rights form. Throughout the course of the interrogation James repeatedly asked for water because he was thirsty and shoes because his feet were cold. Detective Owens told James he would take his request for water "into consideration." On page 70 of the interrogation transcript James states, "I'm not saying' nothing else I'm not doing nothing else I'm gonna – I'm ready to go to jail come take me down, I ain't never get my . . . shoes my feet getting cold. You know I'm ready to go to jail then maybe I'll get some socks or somethin' and I can go to sleep." The interrogation, however, did not cease. Instead, a second detective, Jesus Prieto, entered the interrogation room and Detective Owens left. James asked to be taken to jail at least ten more times. A third detective, Paul Freeman, then entered the interrogation room. On page 97 of the transcript James told Detective Freeman, "I ain't saying nothing else. Take me to jail, file the charges, and I'll get a lawyer." After this statement detectives ended the first interrogation at 6:13 a.m. While Detective Prieto transported James to jail for booking he interrogated James a second time. Detective Prieto initiated the conversation and no *Miranda* warnings were provided to James before the interrogation began. James was interrogated for a third time the following day by Detectives Owens and Freeman. This time Detective Owens told James, "I'm gonna go through the same spiel, you know, just' cause I—like I said yesterday, we got—we got procedures and stuff. So I'm

gonna advise you of your rights again." James acknowledged that he understood his rights but this time refused to sign the advice-of-rights form and asked for his shoes and medicine. The detectives then reminded James of their previous conversations and asked James to explain what happened at the victim's house again.

After a lengthy evidentiary hearing the district court suppressed the first two interrogations because Detective Owens admitted that he purposely used a "minimization technique" to downplay the significance of the *Miranda* warnings during the first interrogation and did not re-advise James of his *Miranda* rights during his second interrogation. The district court did not suppress the statements made during the third interrogation because it concluded that detectives did not minimize the importance of James' *Miranda* rights at the start of the third interrogation. The district court also concluded that James did not unequivocally invoke his right to counsel because it was "unclear whether [James'] comment reference[d] his Fifth Amendment or Sixth Amendment right to counsel." The district court did not decide whether James invoked his right to silence when he told the detective on two separate occasions "I'm not saying nothing else," or whether detectives scrupulously honored James' request. *See Michigan v. Mosley*, 423 U.S. 96, 104 (1975) ("[T]he admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his right to cut off questioning was scrupulously honored." (internal quotation marks omitted)).

Despite the number of claims raised in James' motion to suppress and the failure of the district court to address all of those claims

SUPREME COURT
OF
NEVADA

(O) 1947A

5

in its order, on appeal, James only raises one claim with respect to the district court's decision not to suppress his third interrogation.[2] He argues that the Supreme Court's opinion in *Missouri v. Seibert*, 542 U.S. 600 (2004), required the district court to suppress his third interrogation. James analogizes the "minimization technique" utilized by Detective Owens to the two-step interrogation technique addressed in *Seibert*. Because the State does not argue that the district court erred by concluding that the minimizing behavior of detectives during the first interrogation of James required suppression, we assume for the purposes of this appeal that the minimization technique utilized by Detective Owens was of a constitutional dimension and rendered any *Miranda* waiver invalid. While both techniques are similar in that they are designed "to get a confession the suspect would not make if he understood his rights at the outset," *id.* at 613, their differences here are dispositive. The reason the second interrogation was suppressed in *Seibert* was because the two-step interrogation technique was designed to secure a waived confession during the second interrogation. Detective Owens' interrogation technique, however, was designed to secure a waived confession during the first interrogation. Therefore, *Seibert* does not

---

[2]Because it was not raised by James, the question as to whether the district court should have suppressed James' third interrogation based on the invocation of his *Miranda* rights is not before this court. *See* NRAP 28(a)(8); *Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. ___, ___ n.3, 252 P.3d 668, 672 n.3 (2011) ("Issues not raised in an appellant's opening brief are deemed waived.").

 

require James' third interrogation to also be suppressed based on the minimization technique that was used during the first interrogation.

James also argues, however, that Detective Owens used the same "minimization technique" during the third interrogation and that the district court erred by failing to suppress the statements made during his third interrogation on the same grounds that it suppressed the statements he made during his first interrogation. The State argues that Detective Owens' comments during the third interrogation were "innocuous" and urges this court to defer to the district court's conclusion that during the third interrogation "new *Miranda* warnings were given to James and the importance of those rights was not minimized." Read in isolation, we may be inclined to agree with the State that the statements made by Detective Owens were innocuous. However, Detective Owens clearly incorporated the improper statements he made during his first interrogation into his subsequent *Miranda* warning by referring to the "spiel" he gave "yesterday." Because Detective Owens incorporated those improper statements by reference into his third interrogation, we conclude that the district court erred by failing to suppress that interrogation.[3]

Because this error is of a constitutional dimension we must reverse unless the error is harmless beyond a reasonable doubt. *See*

---

[3]Because we conclude that the district court erred by failing to suppress the third interrogation in its entirety, we need not address James' other claim that the district court erred by denying his motion to redact the lengthy narrative questions posed to James by detectives which allowed them to introduce a theory of motive which was otherwise inadmissible.

 

*Diomampo v. State*, 124 Nev. 414, 428, 185 P.3d 1031, 1040 (2008). James was interrogated for 35 minutes during his third interrogation. He admitted that he was in the victim's house, the victim accused him of turning against him, the victim pointed a gun at him, the gun went off, and he panicked and took off after kicking in the back door. James also admitted that the victim aggravated him just before the shooting by accusing him of turning against the victim. The State was able to use these statements to demonstrate that James and the victim got into an argument inside the victim's home. In addition to using James' own statements against him, the State was also able to introduce a possible motive for the murder without presenting any admissible evidence at trial. During the interrogation, detectives spent over half of their time trying to get James to admit that he was not acting alone and that he was colluding with the victim's estranged wife or some other family member to kill the victim so that the family members could inherit his money and property. No evidence was presented at trial to support this theory and James did not respond to a majority of the detectives' questions and accusations on this subject. Although the jury was instructed that the detectives' statements could only be considered to the extent that they supplied meaning to James' answers, the narrative statements and unanswered questions span almost 10 pages and the jury may have used this additional theory of motive to explain why the murder was deliberate and premeditated rather than an accident as James contended during all of his recorded statements. The State itself also admits that "the detectives' extensive questioning regarding James' motive for the crime and another party's involvement was relevant in that it made facts of consequence,

Supreme Court
of
Nevada

(O) 1947A

8

premeditation and deliberation, more probable than without the evidence." We are not convinced that the admission of the third interrogation was harmless beyond a reasonable doubt. Therefore, we

ORDER the judgment of the district court REVERSED AND REMAND this matter to the district court for proceedings consistent with this order.[4]

_Pickering_ , J.
Pickering

_Parraguirre_ J.
Parraguirre

_Saitta_ , J.
Saitta

cc: Hon. Valerie Adair, District Judge
Special Public Defender
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

---

[4]Because we are reversing and remanding for a new trial based upon the suppression issue, we need not address James' other claims that (1) the district court erred by denying his motion to redact the detectives' narrative questions and statements during the third interrogation, (2) the State committed prosecutorial misconduct by using a yellow light example to explain deliberation and premeditation, (3) the district court erred by using the language "material elements" in the reasonable doubt instruction, and (4) cumulative error requires reversal.

SUPREME COURT
OF
NEVADA

(O) 1947A